[No. 27693. Department Two. December 8, 1939.]

EUGENE C. METZGER, *Respondent*, v. CHARLES G. MORAN
et al., *Appellants.*[1]

*J. Speed Smith* and *Henry Elliott, Jr.,* for appellants.

*J. L. Rucker* and *Thos. A. Stiger, Jr.,* for respondent.

GERAGHTY, J.—This action arises out of a collision between two automobiles at the intersection of Rucker avenue and Nineteenth street, in the city of Everett. The plaintiff sued for personal injuries and property damage sustained by him, resulting from the alleged negligent driving of the defendant Charles G. Moran. Trial of the cause to a jury resulted in a verdict in favor of the plaintiff. After denial of a motion for new trial, judgment was entered upon the verdict.

The errors assigned by the appellants for reversal

[1]Reported in 96 P. (2d) 580.

of the judgment are based upon the court's refusal to admit testimony offered by them tending to show that they did not know that Nineteenth was an arterial street; and that, by reason of an obstruction to their view, caused by an automobile and truck parked "alongside and near to the arterial sign," they could not see it, and drove into the intersection believing they were entitled to the right of way over any traffic approaching from their left.

Nineteenth street is an arterial way running east and west; Rucker avenue runs north and south. The collision occurred as the respondent was driving west on Nineteenth street and the appellants south on Rucker avenue. A stop sign, of the proper height and design, was in place on the west side of Rucker avenue, a short distance north of the intersection.

It is undisputed that appellants' car was driven into the arterial street without stopping, and the jury must have found, under the court's instructions, that this was the proximate cause of the accident.

While Mr. Moran was on the stand, his counsel offered to prove by him that he did not know that Nineteenth was an arterial street and, for this reason, he did not stop;

". . . that after the accident had occurred his attention was called to the fact that it was an arterial stop; that he then went over to the corner to see the sign, and at that time there were two cars parked right against it, where it made it impossible for a driver of a car going in the direction he was going to see the sign."

The court sustained an objection to the offer. Later, while Mrs. Moran was on the stand, counsel made a similar offer of proof, to which the court sustained an objection in so far as the testimony was intended to show that the driver could not see the stop sign. Mr.

Moran was then recalled and asked if there were any cars parked on the west side of Rucker avenue as he approached Nineteenth street, and, if so, to indicate on a map in evidence where they were. Counsel for respondent objected to the testimony if offered for the purpose of the former offer, saying that, if the offer was made as preliminary to something else, he had no objection. Counsel for appellants then stated that his only purpose was to show that the cars were so parked that the driver could not see the sign; whereupon the court sustained the objection.

Rem. Rev. Stat., Vol. 7A, § 6360-106 [P. C. § 2696-864], after providing for the designation of arterial highways and the posting of signs, of the standard design adopted by the director of highways, continues:

"It shall be unlawful for any person operating any vehicle when entering any intersection determined, designated and bearing the sign aforesaid, to fail and neglect to bring such vehicle to a complete stop before entering such intersection."

In *Washington v. Seattle,* 170 Wash. 371, 16 P. (2d) 597, 86 A. L. R. 113, error was assigned upon the giving of an instruction, the first paragraph of which follows:

" 'You are instructed that if you find that the stop sign was erected and standing at said alleged intersection and that defendant John Claseman, immediately preceding said collision, was aware of the presence and existence of said stop sign, or, acting as a reasonable and ordinary prudent person under like or similar circumstances, would have been aware of the same, or should have seen said stop sign, then said John Claseman would be negligent if he failed to stop at said stop sign, provided you believe that an ordinarily careful and prudent person, under like or similar circumstances, in the exercise of reasonable care, would have stopped at said stop sign.' "

660

Passing upon the instruction, this court said:

"The first paragraph of the instruction relates to respondent Claseman. We think that it was erroneous in two respects: First, it submitted to the jury the existence of the stop sign as a question of fact, whereas its existence was admitted by the answers of both respondents.

"Second, it made obedience to the ordinance which required respondent Claseman to stop, a matter of discretion on his part, rather than a positive duty.

"The law did not permit him to govern his action merely by the exercise of reasonable care; it required him to stop. If the ordinance is to be construed as the instruction construes it, there would rarely be a case where a driver would be guilty of negligence in failing to stop, for he could always seek refuge in the assertion that reasonable care did not call for compliance with the ordinance. The law in this respect says positively what the care to be exercised by the driver is, and does not leave it to speculation, or even to the driver's judgment."

It is a maxim that ignorance of the law excuses no man; not that all men know the law, but because " 'tis an excuse every man will plead, and no man can tell how to confute him."

When the proper authority has established an arterial highway and notified its existence to the public by the erection of a stop sign, any one approaching the arterial from an intersecting street is presumed to know that it is such and required to obey the statutory injunction to stop. He cannot be heard to say he did not know of the existence of the sign, or that he could not see it.

The proof offered by the appellants, which the court refused, tended to show that, after the accident, they left their car and went back to the stop sign, where they saw the parked cars. A lesser measure of care before the accident would have disclosed the existence of the sign. The respondent, driving on the arterial

street, for whose protection the stop sign was posted, had a right to assume that the law would be obeyed. If the appellants could have excused their failure to stop by showing that parked cars interfered with their seeing the sign, other drivers failing to stop could, with equal reason, urge that their view was interrupted by passing vehicles to their right. The purpose of the law can be accomplished only by imputing to the driver knowledge of the existence of the sign and full responsibility for failure to stop before entering the arterial.

The appellants rely on *Lyle v. Fiorito*, 187 Wash. 537, 60 P. (2d) 709, and *Baldwin v. Washington Motor Coach Co.*, 196 Wash. 117, 82 P. (2d) 131. Neither of these cases is controlling here.

In the first of these cases, the court sustained a judgment in favor of the plaintiff and against King county for the death of her husband, resulting from a traffic accident in an arterial intersection. The county had permitted the road entering the arterial to remain unmarked, and, by reason of this lack of notice, the deceased drove into the arterial way without stopping. The court held that the county was under a statutory duty to maintain a stop sign, and that its failure to do so was actionable negligence. In the course of its opinion, the court said:

"Under the law, traffic approaching an arterial from an intersecting street must yield the right of way, regardless of the general rule. This exception to the law giving the driver on the right the preference becomes an absolute menace unless drivers approaching an arterial are warned of that fact. This is demonstrated by the facts in the case at bar."

In the *Baldwin* case, the facts were that one of the defendant's busses had knocked down a stop sign. Two days later, the sign not having been restored, an accident occurred in the arterial intersection, resulting in

the death of Mrs. Gollofon. Her administratrix brought an action against the motor coach company for damages, alleging that the accident resulted from the absence of the stop sign. The jury having returned a verdict in favor of the plaintiff, a new trial was granted for error in the giving of a faulty instruction. On plaintiff's appeal, the order granting a new trial was affirmed. The challenged instruction told the jury, in effect, that the defendant would not be liable if the sign was knocked down " 'without negligence on its part.' "

In the course of its opinion affirming the order, the court reaffirmed the rule that the violation of a statute intended to prevent injury to persons or property constituted negligence *per se* and, if it contributed proximately to injury, is actionable; but said that, if the respondent was not guilty of any negligence in knocking the sign down, and did not know that it was knocked down,

". . . at most it could not be guilty of more than a technical violation of the statute and ordinance in question. To excuse the respondent for this technical violation, which resulted from a cause—the negligence of Schmidt—beyond respondent's control, would not necessarily enunciate a principle inconsistent with the rule that violation of a statute is negligence *per se,* and may be taken

" '. . . merely as an assertion of the rule that statutes are to be reasonably construed and that a statutory duty may be modified by the peculiar circumstances of a particular case.' 45 C. J. 732."

The peculiar circumstances of that case, which the court held to warrant a modification of a statutory duty, are not present here. We conclude that the court correctly refused the proof offered by appellants in exculpation of their violation of the statute.

The appellants complain that, while the court re-

fused evidence tending to show they could not see the sign, it allowed the respondent, in making his case in chief, to show the conditions surrounding the intersection, including parked cars and the existence of a stop sign, thus opening up the subject so as to entitle appellants to present counter evidence. But, in denying appellants' offer of proof for the purpose stated, the court said they might show the surrounding conditions, including parked cars, if any there were, but not for the purpose of proving they could not see the stop sign. Their tender of proof, in the circumstances of the case, was properly refused as being immaterial, since it would not excuse their failure to stop.

The judgment is affirmed.

BLAKE, C. J., BEALS, STEINERT, and JEFFERS, JJ., concur.