## FARMERS NATIONAL BANK v. COYNER ET AL.

[No. 6,496. Filed June 25, 1909. Rehearing denied October 7, 1909.]

1. TRIAL.—*Directing Verdict.*—Where the party having the burden of proving a material fact wholly fails, or where the facts are admitted, or where the controlling evidence is documentary, and but one conclusion can reasonably be drawn therefrom, a verdict may be directed; but where a decision involves the credibility of witnesses and must rest upon inferences and deductions from facts proved, a verdict should not be directed. p. 338.

2. TRIAL.—*Directing Verdict.—Evidence.—How Considered.*—On a motion to direct a verdict only the facts and inferences most favorable to the adverse party can be considered. p. 339.

3. SALES.—*Completion of.—Personal Property.*—The title to personal property does not pass, on a sale thereof, so long as any act remains to be done before the completion of the sale.  p. 339.

4. SALES.— *Completion.— Personal Property.— Identification.*—The selection and designation of the personal property which is the subject of a sale is ordinarily sufficient to pass the title thereto.  p. 339.

5. SALES.—*Future Crops.*—A sale of a crop to be grown passes no title thereto until the crop is grown and notice is given to the vendee, or an appropriation of the grown crop to such contract.  p. 340.

6. SALES.—*Appropriation of Property to.—Intention.*—The form or manner of appropriating personal property to a contract of sale is immaterial, where the intention so to do exists.  p. 340.

7. SALES.—*Possession.—Change of.*—In determining when a change of possession of personal property occurs under a sale, the character of the property, the nature of the transaction, the position and relation of the parties, and the intended use of the property must be considered.  p. 340.

8. SALES.—*Future Crops.—Appropriation of, to Contract.—Evidence.—Directing Verdict.—Conversion.*—Where a bank bought "one hundred thirty-six dollars and fifteen cents' worth of the landlord's portion of the crop raised on Coyner's farm" before the crop was raised, and there was evidence showing that the landlord said—referring to a separate crib—that "the bank might get that corn," and later, that if he did not take up his note within ten days such bank could take the corn allowing him the market price, the landlord failing to take up the note, it is for the jury to determine whether title to such corn passed, and a peremptory instruction against the bank in an action for the conversion thereof is improper.  p. 340.

From Clinton Circuit Court; *Joseph Claybaugh,* Judge.

Action by the Farmers National Bank, of Sheridan, Indiana, against William S. Coyner and another. From a judgment for defendants, plaintiff appeals. *Reversed.*

*Harry C. Sheridan, William S. Christian, Pearson & Pearson* and *Earl F. Gruber,* for appellant.

*Doan & Orbison* and *Boulden & Boulden,* for appellees.

HADLEY, C. J.—This was an action brought by appellant against appellees for damages for conversion. At the conclusion of appellant's evidence, upon motion of appellees,

and over the objection of appellant, the court instructed the jury to return a verdict for appellees, which it accordingly did. Appellant filed a motion for a new trial, which was overruled, and judgment was rendered in favor of appellees. The ruling on its motion for a new trial is assigned as error. The only questions presented are that the court erred in giving the instruction before mentioned, and that the evidence is insufficient to sustain the verdict. Both will be considered together.

It was shown by the evidence that appellee Coyner was the owner of a certain described farm; that appellee Owen was his tenant; that on February 13, 1903, appellee Coyner sold to John C. Newby, president of appellant bank, for the bank, "one hundred thirty-six dollars and fifteen cents' worth of the landlord's portion of the crop raised on Coyner's farm;" that said sale was evidenced by a written bill of sale, and the purchase price was paid at that time; that the crops were not planted at the time of the sale. The bill of sale did not specify what the crop was to consist of, nor when it should be raised. It was, however, shown by the evidence that in 1903 corn was raised on the land described, and it was not shown that any other crop was raised. It was also shown that Coyner directed his tenant to gather the landlord's portion of the corn raised in 1903 on the tract described, and to place it in a crib separate from corn raised from other tracts belonging to Coyner, which the same tenant had rented, saying: "The bank might get that corn." Afterwards Coyner had a conversation with John C. Newby, representing the bank, in which he, for the bank, demanded the corn, and Coyner said: "I do not want you to take that corn, I want it to feed, and if you will give me ten days to make a note I will do that." To which Newby replied: "All right, we do not want the corn, what we want is the money." To which Coyner replied: "Now if I do not make arrangements in ten days about this note you can come and take that

corn to the elevator and allow me the market price.'' In
this conversation Coyner also said the corn was in the crib
there on his farm, and designated the crib. After the ex-
piration of ten days, Coyner having failed to give his note
for the corn, appellant sent teams out to haul in the corn.
The corn was shown to the representative of appellant by
Owen, in the crib, as described. There was about four hun-
dred bushels of it and it was worth thirty-two or thirty-
three cents a bushel at the crib. But Owen, representing
Coyner, refused to let them have the corn, saying that Coy-
ner needed it to feed. Owen and Coyner were then ordered
not to dispose of the corn, as it belonged to the bank. After-
wards Owen, at the direction of Coyner, fed the corn to stock
belonging to Owen and Coyner.

The rules by which we are to be governed in this case are
clearly laid down in the case of *Haughton* v. *Aetna Life Ins.*
*Co.* (1905), 165 Ind. 32, where the court say: ''The
1. Constitution of this State (Art. 1, §20) provides:
'In all civil cases, the right of trial by jury shall re-
main inviolate. Courts have guarded this right, with scrupu-
lous care, against any encroachment. In all cases triable by
jury the jurors are the sole and exclusive judges of the facts
proved, and, of necessity, therefore, of the credibility of wit-
nesses, and of the weight to be given to their testimony.
Where upon a material point there is a failure of proof in
the evidence of the party having the burden of an issue, the
court may, as a matter of law, instruct the jury in favor of
the other party to such issue. Where the facts are admitted
by the pleadings or otherwise, or where the evidence upon
the controlling question is documentary, and its interpreta-
tion and construction a matter for the court, and but one
conclusion reasonably deducible therefrom, then in such
cases the court may, as a matter of law, direct a verdict in
accordance with the evident facts, and in favor of the party
having the affirmative of the issue. But where a determina-
tion of the issue involves the credibility of witnesses, and

rests upon inferences and deductions to be drawn from facts proved, it will be an invasion of the province of the jury for the court to direct a verdict.'' See, also, *Hamilton* v. *Hanneman* (1898), 20 Ind. App. 16; *Vance* v. *Vance* (1881), 74 Ind. 370; *Adams* v. *Kennedy* (1883), 90 Ind. 318.

In considering a motion for such instruction, the court is bound to accept as true all facts the evidence tends to prove and all inferences reasonably deducible therefrom against the party so moving. *Hall* v. *Terre Haute Electric Co.* (1906), 38 Ind. App. 43; *Roberts* v. *Terre Haute Electric Co.* (1906), 37 Ind. App. 664; *Curryer* v. *Oliver* (1901), 27 Ind. App. 424.

The question at issue between the parties at bar was whether appellant ever became possessed of the title to the corn in question. It is insisted by appellees that the title did not pass, for the reason that the corn was not specifically designated by the owner and set apart for the purchaser. It is a general rule established by many authorities that in case of sale of personal property, where any act remains to be done before the sale is complete, the title remains in the seller. *Bertelson* v. *Bower* (1882), 81 Ind. 512; *Morgan* v. *East* (1890), 126 Ind. 42, 9 L. R. A. 558; Benjamin, Sales (3d Am. ed. by Bennett), §353.

The expression generally used, ''that if any thing remains to be done by the seller, the title does not pass,'' has been explained to mean, by Selden, J., in the case of *Terry* v. *Wheeler* (1862), 25 N. Y. 520, that where something is to be done by the seller to ascertain the identity, quantity or quality of the thing sold, or to put it in the condition which the terms of the contract require, the title does not pass. And in that case the court held that an agreement by the vendor of lumber to transport it to the cars and deliver it free of charge, did not prevent the title from passing immediately, where what was sold was selected and designated.

The bill of sale in question was for a crop to be grown.

In such case no title passes until the crop is grown and notice given to the vendee, or some act done by the vendor designating it as the article sold, either by setting it apart, marking it, or some other similar act. *Fordice* v. *Gibson* (1891), 129 Ind. 7; Benjamin, Sales (3d Am. ed. by Bennett), §352; *First Nat. Bank* v. *Crowley* (1872), 24 Mich. 492; *Ballentine* v. *Robinson* (1863), 46 Pa. St. 177; *Moline Scale Co.* v. *Beed* (1879), 52 Iowa 307, 3 N. W. 96, 35 Am. Rep. 272.

But these general rules are founded on the presumed intentions of the parties. If there are attendant circumstances from which the intention may be inferred that the property shall pass at another or different time, or under other and different circumstances, that intention will be effectuated. *Clarkson* v. *Stevens* (1882), 106 U. S. 505, 1 Sup. Ct. 200, 27 L. Ed. 139; *Fordice* v. *Gibson, supra.* The parties to the contract may agree when and under what conditions the property in question shall pass to the prospective owner. *Andrews* v. *Durant* (1854), 11 N. Y. 35. Their intention must be the governing consideration in every case. *Turley* v. *Bates* (1863), 2 H. & C. *200. This intention, as well as whether the contract has been executed, is a question of fact to be determined from the terms and stipulations of the agreement and actions of the parties. *Branigan* v. *Hendrickson* (1897), 17 Ind. App. 198; *Lester* v. *East* (1875), 49 Ind. 588, 594. And in determining what constitutes a change of possession or delivery of personal property, due regard must be had to the character of the property, the nature of the transaction, the position and relations of the parties to the sale and the intended use of the property. *Avery Mfg. Co.* v. *Emsweller* (1903), 31 Ind. App. 291, and cases cited.

In this case, there is no question but that the crop was sold and the consideration therefor paid at the time of the sale. There was evidence tending to show that the seller separated and set apart the corn in

question, and specifically referred to it as the corn the bank might get. If this were done with the intention and purpose thereby to deliver the same to the bank in fulfillment of the contract, there could be no question but that it would be a sufficient delivery to pass title. As evidence of this intention, it appears that Coyner recognized the claim of the bank upon this corn, and agreed to repurchase it from the bank, stating that if he did not do so within a specified time the bank might come and get it. It would not invalidate the transfer of the title if more than the amount so purchased by the bank was thus set aside and designated, since, in cases like the present, where the property sold is in bulk— as grain and the like—and a larger amount is thus set aside and designated for the purchaser than was actually purchased, giving to the purchaser the right and power to make the separation, the title sufficiently passes to the purchaser to sue any one for the wrongful conversion of the same, even before the separation has been made. *Crofoot* v. *Bennett* (1849), 2 N. Y. 258; *Martz* v. *Putnam* (1889), 117 Ind. 392.

The record shows that there was evidence from which the jury might infer that Coyner, in separating and specifically designating the corn in question as the bank's corn, intended thereby to deliver the corn to the bank in conformity with the terms of sale theretofore made. Under the foregoing rules, it is our opinion that the court erred in giving the peremptory instruction, directing the jury to find for the appellees.

Judgment reversed, with instructions to grant a new trial.