ATTORNEYS FOR PETITIONER:
**E. KENDRICK SMITH**
**JOHN M. ALLAN**
JONES DAY
Atlanta, GA

**KRISTEN M. CARROLL**
KIGHTLINGER & GRAY, LLP
Indianapolis, IN

ATTORNEYS FOR RESPONDENT:
**GREGORY F. ZOELLER**
ATTORNEY GENERAL OF INDIANA
**JOHN P. LOWREY**
DEPUTY ATTORNEY GENERAL
Indianapolis, IN

**FILED**
Dec 19 2014, 12:45 pm

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# INDIANA TAX COURT

| | |
|---|---|
| LOWE'S HOME CENTERS, LLC, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Cause No. 49T10-1201-TA-6 |
| | ) |
| INDIANA DEPARTMENT OF | ) |
| STATE REVENUE, | ) |
| | ) |
| Respondent. | ) |

## ORDER ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

**FOR PUBLICATION**
**December 19, 2014**

WENTWORTH, J.

Lowe's Home Centers, LLC (Lowes) challenges the Indiana Department of State Revenue's assessment of Indiana's gross retail tax (sales tax) on construction material it incorporated into its customers' real property during the tax years ending on December 31, 2007, 2008, and 2009 (the years at issue). The matter, currently before the Court on the parties' cross-motions for summary judgment, presents one issue for the Court to decide: did Lowes properly self-assess and remit use tax on that

construction material or was it required to collect sales tax from its customers on it? The Court holds that Lowes properly self-assessed and remitted use tax on the construction material.

## FACTS AND PROCEDURAL HISTORY

Lowes is a national home improvement retail chain that operates stores in Indiana. (See, e.g., Resp't Mot. Summ. J. ("Resp't Des'g Evid."), Ex. 1 ¶¶ 1, 9.) Generally speaking, when Lowes purchased tangible personal property (i.e., merchandise) during the years at issue to sell in its Indiana stores, it did not pay any sales tax pursuant to Indiana's purchase for resale exemption set forth in Indiana Code § 6-2.5-5-8. When Lowes sold that tangible personal property, however, it collected sales tax from its customers and remitted it to the Department. The amount of sales tax Lowes collected was calculated using the retail price of the tangible personal property sold. See generally IND. CODE § 6-2.5-1-5(a)-(b) (2007) (amended 2009); IND. CODE § 6-2.5-2-1 (2007); IND. CODE § 6-2.5-2-2 (2007) (amended 2008).

During the years at issue, Lowes also performed real property improvement services as a general contractor.[1] (Resp't Des'g Evid., Ex. 1 ¶¶ 1, 4.) For example, Lowes might have been engaged to install a new roof on, or new kitchen cabinets in, a customer's home. Lowes performed these services pursuant to installation contracts with its customers. (Resp't Des'g Evid., Exs. 1 ¶¶ 4, 9; 1:G.) The installation contracts

---

[1] "Contractor" means "any person engaged in converting construction material into realty." 45 IND. ADMIN. CODE 2.2-3-7(a) (2007) (see http://www.in.gov/legislative/iac/); 45 IND. ADMIN. CODE 2.2-4-25(a) (2007) (see http://www.in.gov/legislative/iac/). "Construction material" means "any tangible personal property to be used for incorporation in or improvement of a facility or structure constituting or becoming part of the land on which such facility or structure is situated." 45 I.A.C. 2.2-3-7(b); 45 I.A.C. 2.2-4-25(b).

provided that Lowes would furnish both the construction material – typically pulled from its store inventory – and the labor to complete the specified projects.[2] (See, e.g., Resp't Des'g Evid., Exs. 1:G at 1, 1:K at 21-23, 1:L at 21.) Lowes subsequently self-assessed and remitted use tax to the Department on the construction material it furnished under the installation contracts. (Resp't Des'g Evid., Ex. 1:D at 3-4.) Lowes calculated the amount of use tax it owed using its cost to acquire the construction material (i.e., its wholesale cost). (Resp't Des'g Evid., Ex. 1:D at 3-4.)

In November of 2010, the Department completed an audit of Lowes. During the course of the audit, the Department determined that instead of self-assessing and remitting use tax on the construction material furnished under the installation contracts, Lowes should have collected sales tax from its customers using the retail cost of the construction material. (See Resp't Des'g Evid., Ex. 1:D at 3-4.) As a result, the Department issued proposed sales tax assessments against Lowes, including penalties and interest.[3] (Resp't Des'g Evid., Ex. 1:B.)

Lowes subsequently filed a protest with the Department. On June 28, 2011, after conducting an administrative hearing, the Department issued a Letter of Findings denying Lowes's protest. On November 29, 2011, after conducting a rehearing, the Department again denied Lowes's protest in a Supplemental Letter of Findings.

Lowes initiated this original tax appeal on December 7, 2012. Both Lowes and the Department subsequently filed motions for summary judgment. The Court held a

---

[2] Lowes subcontracted the labor portion of the project to a third party. (See Resp't Mot. Summ. J. ("Resp't Des'g Evid."), Ex. 3 at 2.)

[3] The Department did, however, apply the use tax originally remitted by Lowes as a credit against the overall proposed sales tax liability. (See Resp't Des'g Evid., Ex. 1:D at 4.)

hearing on those motions on October 24, 2013. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); Horseshoe Hammond, LLC v. Indiana Dep't of State Revenue, 865 N.E.2d 725, 727 (Ind. Tax Ct. 2007), review denied. Cross-motions for summary judgment do not alter this standard. Horseshoe Hammond, 865 N.E.2d at 727.

## LAW

Indiana imposes sales tax "on retail transactions made in Indiana." I.C. § 6-2.5-2-1(a). A retail transaction occurs when a retail merchant, in the ordinary course of his regularly conducted trade or business, "(1) acquires tangible personal property for the purpose of resale; and (2) transfers that property to another person for consideration." IND. CODE § 6-2.5-4-1(a), (b) (2007). The purchaser of the tangible personal property is liable for the sales tax. I.C. § 6-2.5-2-1(b).

Indiana imposes a use tax "on the storage, use, or consumption of tangible personal property in Indiana if the property was acquired in a retail transaction, regardless of the location of that transaction or of the retail merchant making that transaction." IND. CODE § 6-2.5-3-2(a) (2007). The use tax is complementary to the sales tax in that it applies only to transactions that would have been subject to the sales tax but for some reason have escaped it. Indiana Dep't of State Revenue v. AOL, LLC, 963 N.E.2d 498, 501 (Ind. 2012). The person who stores, uses, or consumes the tangible personal property is liable for the use tax. See IND. CODE § 6-2.5-3-6(b) (2007).

4

Indiana also imposes use tax "on the addition of tangible personal property to a structure or facility, if, after its addition, the property becomes part of the real estate on which the structure or facility is located."[4] I.C. § 6-2.5-3-2(c). Thus, contractors that do not pay sales tax on their purchase of construction material must remit use tax on their cost of purchasing the material when they incorporate it into real property. See I.C. § 6-2.5-3-2(c); supra note 1. See also 45 IND. ADMIN. CODE 2.2-3-8(b) (2007) (see http://www.in.gov/legislative/iac/); 45 IND. ADMIN. CODE 2.2-4-21(b) (2007) (see http://www.in.gov/legislative/iac/) (both stating that ("[a]ll construction material purchased by a contractor is taxable either at the time of purchase, or if purchased exempt (or otherwise acquired exempt) upon disposition unless the ultimate recipient could have purchased it exempt"). The imposition of this tax accounts for the fact that

> [i]n general, all sales of tangible personal property are taxable, and all sales of real property are not taxable. The conversion of tangible personal property into realty does not relieve [a] taxpayer from a liability for any owing and unpaid [sales] tax or use tax with respect to such tangible personal property.

45 I.A.C. 2.2-3-8(a). See also 45 I.A.C. 2.2-4-21(a).

## ANALYSIS

The question before the Court is whether Lowes properly self-assessed and remitted use tax on the wholesale cost of the construction material it furnished under the

---

[4] Use tax does not apply to such additions of tangible personal property, however, if:

(1) the [sales] or use tax has been previously imposed on the sale or use of that property; or

(2) the ultimate purchaser or recipient of that property would have been exempt from the [sales] and use taxes if that purchaser or recipient had directly purchased the property from the supplier for addition to the structure or facility.

IND. CODE § 6-2.5-3-2(c) (2007).

5

installation contracts or whether it was required to collect sales tax on that material from its customers using its retail price. Lowes's position is that given the unambiguous language of Indiana Code § 6-2.5-3-2(c), 45 I.A.C. 2.2-3-8(b), and 45 I.A.C. 2.2-4-21(b), it properly self-assessed and remitted use tax on the construction material at issue. (See, e.g., Hr'g Tr. at 4-6.)

The designated evidence indicates that the Department stipulated that Lowes was a contractor with respect to its installation contract obligations. (See Resp't Des'g Evid., Ex. 1 ¶ 1.) The Department also acknowledged that in fulfilling its obligations under the installation contracts, Lowes took tangible personal property, attached it to its customers' homes, and that attachment converted the tangible personal property into real property. (Compare, e.g., Resp't Des'g Evid., Exs. 1:D at 3, 1:F at 3 with I.C. § 6-2.5-3-2(c).) Consequently, because Lowes initially purchased the construction material without paying sales tax, it was required to self-assess and remit use tax once it attached it to its customers' homes. (Compare Hr'g Tr. at 4-6 with I.C. § 6-2.5-3-2(c), 45 I.A.C. 2.2-3-8(b), 45 I.A.C.2.2-4-21(b).)

Despite the fact that Indiana Code § 6-2.5-3-2, 45 I.A.C. 2.2-3-8(b), and 45 I.A.C. 2.2-4-21(b) unambiguously required Lowes to remit use tax on the construction material at issue, the Department advances two alternative arguments to support its position that Lowes instead should have collected sales tax using the retail price of the construction material from its customers. In its first argument, the Department contends that with respect to the installation contracts, Lowes was not just a contractor; rather, it was a retail merchant and a contractor. (See Resp't Br. Supp. Mot. Summ. J. ("Resp't Br.") at 5 (asserting that under an installation contract, Lowes sells tangible personal property

6

and then installs it).)  The Department explains that under its administrative regulations 45 I.A.C. 2.2-3-11(c) and 45 I.A.C. 2.2-4-24(c), a contractor that also acts as the retail merchant is required to collect sales tax from its customers on the construction material. (See Resp't Br. at 7-9.)  Indeed, those regulations state that "[a] contractor may function as a retail merchant (having all duties and responsibility as such) with respect to construction material, and then function as an installer or 'converter' of such property which will be treated as having been furnished by the customer."[5]  45 IND. ADMIN. CODE 2.2-3-11(c) (2007) (see http://www.in.gov/legislative/iac/); 45 IND. ADMIN. CODE 2.2-4-24(c) (2007) (see http://www.in.gov/legislative/iac/).

These regulations bifurcate Lowes's installation contracts into separate "events:" (1) a retail sale of tangible personal property subject to sales tax under Indiana Code § 6-2.5-4-1 and (2) the subsequent, non-taxable service of adding that tangible personal property to a structure or facility.  (See Resp't Br. at 5, 7-9; Resp't Br. Resp. Pet'r Mot. Summ. J. at 10.)  But in order for the Department to require Lowes to collect sales tax from its customers, Lowes must have both acquired the tangible personal property for the purpose of resale and then transferred that property to another person for consideration.  See I.C. § 6-2.5-4-1(b).  "A person acquires tangible personal property for the purpose of resale when he intends to transfer it to another person.  And, of course, a person transfers tangible personal property when he actually passes title to

_____

[5] When a customer purchases construction material and then furnishes it to his contractor to install, he is deemed to be the user of that construction material and is therefore liable for any owing and unpaid taxes thereon.  45 IND. ADMIN. CODE 2.2-3-11(a)-(c) (2007) (see http://www.in.gov/legislative/iac/); 45 IND. ADMIN. CODE 2.2-4-24(a)-(c) (2007) (see http://www.in.gov/legislative/iac/).

another person." AOL, 963 N.E.2d at 503 (citations omitted). In the case of the sale of personal property,

> where any act remains to be done before the sale is complete, the title remains in the seller. Th[is] . . . has been explained to mean . . . that where something is to be done by the seller to ascertain the identity, quantity, or quality of the thing sold, or to put it in the condition which the terms of the contract require, the title does not pass.

Farmers' Nat'l Bank of Sheridan v. Coyner, 88 N.E. 856, 858 (Ind. Ct. App. 1909) (emphasis added and citations omitted). Here, as Lowes has explained, its customers "are not purchasing 20 square feet of wood or two boxes of shingles; rather, they are purchasing a completed floor or a newly-shingled roof affixed to their houses." (Pet'r Mem. Law Supp. Mot. Summ. J ("Pet'r Br.") at 25.) (See also Resp't Des'g Evid., Ex. 1:G at 5 (demonstrating that the installation contracts specifically provide that "[a]ny surplus materials upon completion [of a project] shall remain the property of [Lowes] and shall be returned to [Lowes]").) Thus, only when the wood and or shingles are installed would Lowes's customers acquire title to them. See Farmers' Nat'l Bank, 88 N.E. at 858. At that point, however, the wood and shingles have lost their identity as tangible personal property, having been converted to real property. Accordingly, Lowes

did not transfer tangible personal property to its installation contract customers.[6] In Indiana, sales of real property are not subject to either sales or use tax. 45 I.A.C. 2.2-3-8(a); 45 I.A.C. 2.2-4-21(a). See also Indiana Dep't of State Revenue v. Trump Indiana, Inc., 814 N.E.2d 1017, 1020 (Ind. 2004). The Court therefore finds the Department's first argument unavailing and holds that Lowes properly self-assessed and remitted use tax on the wholesale cost of the construction material it furnished under the installation contracts.

---

[6] Indiana Code § 6-2.5-4-1(c) provides that for purposes of selling at retail, "it does not matter whether: (1) the property is transferred in the same form as when it was acquired; (2) the property is transferred alone or in conjunction with other property or services; or (3) the property is transferred conditionally or otherwise." IND. CODE § 6-2.5-4-1(c) (2007). The Department relies on this provision to argue that despite the change in form from construction material to real property, the applicability of Indiana Code § 6-2.5-4-1 trumps that of Indiana Code § 6-2.5-3-2. (See Resp't Br. Supp. Mot. Summ. J. ("Resp't Br.") at 6-8.) This argument is without merit, however, because it does more than just "trump" the applicability of the Indiana Code § 6-2.5-3-2, it nullifies it. But see, e.g., Chrysler Financial Co. v. Indiana Dep't of State Revenue, 761 N.E.2d 909, 916 (Ind. Tax Ct. 2002), review denied; Mechanics Laundry & Supply, Inc. v. Indiana Dep't of State Revenue, 650 N.E.2d 1223, 1232 (Ind. Tax Ct. 1995) (explaining that the Court (1) will not presume the Legislature intended to enact a statutory nullity and (2) will not read two or more statutes that relate to the same general subject matter piecemeal, but rather harmoniously and in pari materia).

The Department's alternative argument is premised on its belief that Lowes's installation contracts were time and material contracts and not lump sum contracts.[7] (See Resp't Br. at 9-11.) As support for this argument, the Department cites to two more of its administrative regulations, 45 I.A.C. 2.2-3-9 and 45 I.A.C. 2.2-4-22. (See Resp't Br. at 9-11.) These regulations provide that when a contractor enters into a time and material contract with his customer, he owes no use tax because his customer is liable for the sales tax on any construction material supplied thereunder.[8] See 45 IND. ADMIN. CODE 2.2-3-9(d)(1) (2007) (see http://www.in.gov/legislative/iac/); 45 IND. ADMIN. CODE 2.2-4-22(d)(1) (2007) (see http://www.in.gov/legislative/iac/). The regulations also

_____

[7] The parties designated as evidence copies of ten installation contracts that they stipulate are representative of all of the installation contracts during the years at issue. (See Resp't Des'g Evid., Exs. 1 ¶ 9; 1:G.) Each is approximately six pages long, with the first two pages setting forth customer information (name and address) and a "Merchandise and Installation Summary." (See, e.g., Resp't Des'g Evid., Ex. 1:G at 1-6.) The Summary first estimates the construction material necessary to complete the specified project (e.g., item numbers, descriptions, and quantities), and provides an aggregate (rather than an item-by-item) "materials price." (See, e.g., Resp't Des'g Evid., Ex. 1:G at 1-2.) The Summary next provides a variety of other types of information, including "labor charges" which is stated as a single amount with no estimate of the number of hours required for completion or an hourly rate. (See, e.g., Resp't Des'g Evid., Ex. 1:G at 2.) The following two pages provide the total price for the installation project (i.e., the sum of the materials price, the labor charges, and in some cases, a delivery fee), the signature blocks for both Lowes and the customer, and estimated beginning and completion dates. (See, e.g., Resp't Des'g Evid., Ex. 1:G at 3-4.) Finally, the last two pages set forth the installation contract's "Terms and Conditions." (See, e.g., Resp't Des'g Evid., Ex. 1:G at 5-6.)

[8] With a time and material contract, the customer agrees to pay a contractor for the actual time he spends, and the construction materials he uses, to complete a project. 6 INDIANA LAW ENCYCLOPEDIA, Contracts § 97 (West 2014). A time and material contract will therefore separately state the contractor's labor charges and his charges for materials. See id. See also 45 IND. ADMIN. CODE 2.2-3-9(d)(1) (2007) (see http://www.in.gov/legislative/iac/); 45 IND. ADMIN. CODE 2.2-4-22(d)(1) (2007) (see http://www.in.gov/legislative/iac/) (both defining a time and material contract as one that "states separately the cost for the construction material and the cost for the labor and other charges"). Thus, the Department has determined that with a time and material contract, the contractor's customer, and not the contractor, is considered the final purchaser, or end user, of the construction materials. See 45 I.A.C. 2.2-3-9(d)(1); 45 I.A.C. 2.2-4-22(d)(1). In other words, under a time and material contract the Department treats the transfer of construction material to the customer (end user) as a discrete taxable transaction from the non-taxable provision of construction services.

provide, however, that when a contractor uses a lump sum contract, he is required to self-assess and remit use tax on the construction materials supplied.[9] See 45 I.A.C. 2.2-3-9(e)(3); 45 I.A.C. 2.2-4-22(e)(3).

The Department asserts that Lowes's installation contracts are "plainly" time and material contracts because they identify a separate materials price from a separate price for labor charges. (Resp't Br. at 10 (emphasis added).) But after reviewing the installation contracts in their entirety and finding the written expressions contained therein to be clear and unambiguous, the Court concludes that Lowes and its customers intended and understood them to be lump sum contracts. See, e.g., PNC Bank, Nat'l Ass'n v. LA Dev., Inc., 973 N.E.2d 1131, 1135 (Ind. Ct. App. 2012) (stating that the primary goal in reviewing a contract is to ascertain and give effect to the intent of the parties that is derived from the written expressions within the four corners of the contract), trans. denied; Forty-One Assocs., LLC v. Bluefield Assocs., L.P., 809 N.E.2d 422, 427 (Ind. Ct. App. 2004) (explaining that a contract must be read as a whole and its language must be construed to give effect and meaning to all its words, phrases, and terms); Merrillville Conservancy Dist. ex rel. Bd. of Dirs. v. Atlas Excavating, Inc., 764 N.E.2d 718, 724 (Ind. Ct. App. 2002) (stating that when the terms of a contract are clear

---

[9] With a lump sum contract, the customer agrees to pay the contractor a stipulated or fixed price to complete a project, regardless of his actual time and material costs. 13 Am.Jur.2d, Contracts, § 18 (2014). See also Stelko Elec., Inc. v. Taylor Cmty. Sch. Bldg. Corp., 826 N.E.2d 152, 156 (Ind. Ct. App. 2005). A lump sum contract therefore need not separate the contractor's labor charges from his material charges; all the combined charges can be quoted as a single price. See 13 Am.Jur.2d, Contracts, § 18. See also 45 I.A.C. 2.2-3-9(e)(3); 45 I.A.C. 2.2-4-22(e)(3) (both defining a lump sum contract as one "that includes all elements of cost in the total contract price"). Thus, the Department has determined that with a lump sum contract, the contractor, and not his customer, is considered to be the final purchaser, or end user, of the construction material and because he (presumably) did not pay sales tax at his point of purchase, he now owes use tax. See 45 I.A.C. 2.2-9-3(e)(3); 45 I.A.C. 2.2-4-22(e)(3).

and unambiguous, they are conclusive, and a court need not resort to any extrinsic evidence to ascertain what the parties intended). The Court's conclusion is based on the following four reasons.

First, the Department has, in an informational bulletin, acknowledged that "[a] construction contractor may furnish a breakdown of the charges for labor, materials and other items without changing the nature of the lump sum contract." Indiana Dep't of State Revenue, Information Bulletin #60 (Aug. 23, 2006) (emphasis added) (available at http://www.in.gov/legislative/iac/showIRArchive). (See also Resp't Des'g Evid., Ex. 6.) Second, the installation contracts state that all construction material and real property improvement services are provided and paid for on the basis of a "total cash price[.]" (See, e.g., Resp't Des'g Evid., Ex. 1:G at 5 (emphasis added).) Each contract then refers to that singularly stated price no fewer than seven times. (See, e.g., Resp't Des'g Evid., Ex. 1:G at 3, 5-6.) Third, the customer must pay that singularly stated price in full upon the execution of the installation contract, which is before the work even begins. (See, e.g., Resp't Des'g Evid., Ex. 1:G at 5-6.) As a result, Lowes bears the financial risk if the cost of the work exceeds its stated contract price. (See, e.g., Resp't Des'g Evid., Ex. 1:G at 5-6 (excepting instances where there are unanticipated foundational defects, zoning law changes, or written change orders).) Fourth, the installation contracts state that "[a]ny surplus materials upon completion of the [contract] shall remain the property of [Lowes] and shall be returned to [Lowes.]" (See, e.g., Resp't Des'g Evid., Ex. 1:G at 5.) Under the Department's regulations, however, Lowes's customers would own any surplus material if the installation contracts were time and material contracts. See 45 I.A.C. 2.2-3-9(d)(1); 45 I.A.C. 2.2-4-22(d)(1).

12

Nonetheless, the Court's determination that Lowes's installation contracts are lump sum contracts is not the end of the story nor is it the basis of the Court's holding. Indeed, Lowes has asked the Court to decide this case based on Indiana's general statutory sales and use tax framework because the distinction between time and material and lump sum contracts is not contained in any statute but is rather "something the Department has completely made up on its own, and passed a regulation to that effect." (Hr'g Tr. at 8.)

The Department has the authority to adopt rules and regulations that enable it to put into effect the purposes of Indiana's sales and use tax statutes, but "it may not make rules and regulations inconsistent with the statute[s] which it is administering, it may not by its rules and regulations add to or detract from the law as enacted, nor may it by rule extend its powers beyond those conferred upon it by law." IND. CODE §§ 6-8.1-1-1, -3-1, -3-3 (2014); Johnson Cnty. Farm Bureau Co-op Ass'n v. Indiana Dep't of State Revenue, 568 N.E.2d 578, 587 (Ind. Tax Ct. 1991) (citing Indiana Dep't of State Revenue v. Colpaert Realty Corp., 109 N.E.2d 415, 422-23 (Ind. 1952)), aff'd by 585 N.E.2d 1336 (Ind. 1992). The Department has created an artificial distinction between time and material contracts and lump sum contracts in its regulations to convert a contractor's use tax liability under Indiana Code § 6-2.5-3-2(c) into a sales tax liability on the materials' higher retail price. See supra notes 8-9. Because Indiana Code § 6-2.5-3-2(c) does not impose use tax liability contingent upon the type of contract a contractor uses, that distinction as contained in 45 I.A.C. 2.2-3-9 and 45 I.A.C. 2.2-4-22 is invalid.

13

## CONCLUSION

Based on the foregoing reasons, the Court GRANTS summary judgment in favor of Lowes and AGAINST the Department.[10]

SO ORDERED this 19TH day of December, 2014.

Martha Wentworth, Judge
Indiana Tax Court

DISTRIBUTION:

E. Kendrick Smith, John M. Allan, JONES DAY, 1420 Peachtree Street NE, Suite 800, Atlanta, GA 30309;

Kristen M. Carroll, KIGHTLINGER & GRAY, LLP, 600 Market Square Center, 151 North Delaware Street, Indianapolis, IN 46204;

Gregory F. Zoeller, ATTORNEY GENERAL OF INDIANA, By: John P. Lowrey, Deputy Attorney General, Indiana Government Center South, Fifth Floor, 302 West Washington Street, Indianapolis, IN 46204-2770.

---

[10] To the extent Lowes claimed the Department's proposed assessments violated its due process and equal protection rights under the Fourteenth Amendment to the U.S. Constitution, as well as its equal privileges rights under Article 1, Section 23 of the Indiana Constitution, (see Pet'r Mem. Law Supp. Mot. Summ. J. at 30; Pet'r Mem. Opp'n Resp't Mot. Summ. J. at 4), the Court's disposition of the case renders those claims moot.