ATTORNEYS FOR PETITIONER:
**MARK J. RICHARDS**
**MATTHEW J. EHINGER**
ICE MILLER LLP
Indianapolis, IN

ATTORNEYS FOR RESPONDENT:
**GREGORY F. ZOELLER**
ATTORNEY GENERAL OF INDIANA
**EVAN W. BARTEL**
DEPUTY ATTORNEY GENERAL
Indianapolis, IN

# IN THE
# INDIANA TAX COURT

FILED
Aug 20 2015, 12:49 pm
CLERK
of the supreme court,
court of appeals and
tax court

| | | |
|---|---|---|
| R.R. DONNELLEY & SONS COMPANY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Cause No. 49T10-1203-TA-00014 |
| | ) | |
| INDIANA DEPARTMENT OF STATE REVENUE, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

**FOR PUBLICATION**
**August 20, 2015**

WENTWORTH, J.

R.R. Donnelley & Sons Company has appealed the Indiana Department of State Revenue's assessments of Indiana use tax on its purchases of shipping pallets for the 2007, 2008, and 2009 tax years (the years at issue). The matter is currently before the Court on the parties' cross-motions for summary judgment, which present one issue for the Court to decide: whether RR Donnelley's purchases of shipping pallets are exempt from use tax under Indiana Code § 6-2.5-5-9(d) ("Nonreturnable Container

Exemption").[1]  The Court finds that they are not.

## FACTS AND PROCEDURAL HISTORY

The following facts are not in dispute.  RR Donnelley is a Delaware corporation headquartered in Chicago, Illinois.  (Pet'r Des'g Evid., Ex. 1 ¶ 3.)  Among other things, RR Donnelley prints advertising inserts and other materials for its retailer customers.  (Pet'r Des'g Evid., Ex. 2 (hereinafter "Taylor Aff.") ¶¶ 3-4.)  RR Donnelley then ships these printed materials for its retailer customers to approximately 2000 newspaper companies throughout the United States.  (Taylor Aff. ¶¶ 4, 12.)  In turn, the newspaper companies distribute the printed materials on behalf of the retailers.  (Taylor Aff. ¶ 4.)

During the years at issue, RR Donnelley purchased pallets from Perfect Pallets, Inc. as containers for shipping the printed materials.  (Taylor Aff. ¶¶ 6, 12.)  RR Donnelley provided Perfect Pallets with sales and use tax exemption certificates for the pallets it purchased.  (See Pet'r Confd'l Des'g Evid., Ex. B at 0177.)  RR Donnelley was under no obligation to return the pallets to Perfect Pallets, under no obligation to require its retailer customers to return the pallets, and under no obligation to restrict the subsequent use of the pallets.  (See Taylor Aff. ¶¶ 9-11; Pet'r Des'g Evid., Ex. 7 (hereinafter "Haag Aff.") ¶¶ 5-7.)  Further, RR Donnelley was under no obligation to track the pallets or notify Perfect Pallets as to their location after shipment.  (See Pet'r Des'g Evid., Ex. 5 (hereinafter "Haag Dep.") at 42; Taylor Aff. ¶¶ 12-13; Ex. 6 (hereinafter "Taylor Dep.") at 10, 30-32, 36.)  RR Donnelly subsequently sold the pallets to its retailer customers or attempted to recover the cost of the pallets from its retailer

---

[1]  Portions of the parties' designated evidence are confidential.  Consequently, this order will provide only the information necessary for the reader to understand its disposition of the issue presented.  See generally Ind. Administrative Rule 9.

customers in the freight charge. (See Pet'r Des'g Evid., Ex. 2B at 0112, 0122, 0133, 0146; Taylor Dep. at 27; Resp't Des'g Evid., Ex. B at 5.)

Generally speaking, Perfect Pallets successfully recovers more than 50 percent of the pallets it sells nationwide. (See Haag Dep. at 38-39.) With respect to the newspaper companies, Perfect Pallets retrieved those pallets in one of two ways. First, Perfect Pallets knows the newspaper companies' schedules and therefore would regularly send a truck to pick up the pallets from the newspaper companies. (Haag Dep. at 23-24.) Second, because the pallets were affixed with Perfect Pallet's name and phone number, the newspaper companies could call Perfect Pallets and request that the pallets be picked up. (Haag Dep. at 9-10, 21, 23.)

In September of 2010, the Department completed an audit of the years at issue. As a result of the audit, the Department issued proposed assessments of use tax, interest, and penalties against RR Donnelley because it failed to pay sales tax on its purchase of the pallets. (See Pet'r Confd'l Des'g Evid., Ex. B at 0172-0175.) The Department determined that because the pallets RR Donnelley purchased were later returned to Perfect Pallets, the pallets were not entitled to the Nonreturnable Container Exemption and therefore subject to use tax. (See Pet'r Confd'l Des'g Evid., Ex. B at 0178.)

On December 15, 2010, RR Donnelley timely protested the Department's proposed assessments. (See Pet'r Confd'l Des'g Evid., Ex. C.) On January 5, 2012, after conducting an administrative hearing, the Department issued a Letter of Findings denying RR Donnelley's protest. (See Pet'r Des'g Evid., Ex. D.) On January 23, 2012, RR Donnelley requested a rehearing. (See Pet'r Des'g Evid., Ex. E.) The Department

3

denied RR Donnelley's request on February 7, 2012. (See Pet'r Des'g Evid., Ex. F.)

On March 9, 2012, RR Donnelley filed this original tax appeal. RR Donnelley and the Department subsequently filed motions for summary judgment. The Court held a hearing on the motions on November 12, 2013. Additional facts will be supplied when necessary.

**STANDARD OF REVIEW**

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a motion for summary judgment, this Court will construe all properly asserted facts and reasonable inferences drawn therefrom in favor of the non-moving party. See Scott Oil Co. v. Indiana Dep't of State Revenue, 584 N.E.2d 1127, 1128-29 (Ind. Tax Ct. 1992). Cross-motions for summary judgment do not alter this standard. Horseshoe Hammond, LLC v. Indiana Dep't of State Revenue, 865 N.E.2d 725, 727 (Ind. Tax Ct. 2007), review denied.

**LAW**

Indiana imposes both a sales tax and a use tax. Sales tax is imposed on all retail transactions made in Indiana. See IND. CODE § 6-2.5-2-1(a) (2007). Use tax is imposed "on the storage, use, or consumption of tangible personal property in Indiana if the property was acquired in a retail transaction, regardless of the location of that transaction or of the retail merchant making that transaction." IND. CODE § 6-2.5-3-2(a) (2007). "The use tax is complementary to the sales tax in that it applies only to transactions that would have been subject to the sales tax but for some reason have

4

escaped it." Lowe's Home Ctrs., LLC v. Indiana Dep't of State Revenue, 23 N.E.3d 52, 54-55 (Ind. Tax Ct. 2014), review denied.

Indiana's Legislature, however, has expressly exempted certain retail transactions from the imposition of sales and use tax. See generally IND. CODE §§ 6-2.5-5-1 to -46 (2007). See also IND. CODE § 6-2.5-3-4(a)(2) (2007) (explaining that the sales tax exemptions also apply to the use tax). For instance, certain retail transactions involving nonreturnable containers are exempt as follows:

> Sales of wrapping material and empty containers are exempt from [sales and use] tax if the person acquiring the material or containers acquires them for use as nonreturnable packages for:
> (1) selling the contents that the person adds; or
> (2) shipping or delivering tangible personal property that:
> (A) is owned by another person;
> (B) is processed or serviced for the owner; and
> (C) will be sold by that owner either in the same form or as a part of other tangible personal property produced by that owner in the owner's business of manufacturing, assembling, constructing, refining, or processing.

I.C. § 6-2.5-5-9(d). In addition, the Department's regulation states that "[t]he receipt from a sale by a retail merchant of . . . [n]onreturnable containers and wrapping materials including steel strap and shipping pallets to be used by the purchaser as enclosures for selling tangible personal property" is exempt from sales and use tax. 45 IND. ADMIN. CODE 2.2-5-16(c)(1) (2007) (see http://www.in.gov/legislative/iac/). The Department defines the term "nonreturnable containers" as "all containers which are not returnable containers." 45 I.A.C. 2.2-5-16(e)(2). "Returnable containers" are defined as "containers customarily returned by the buyer of the contents for reuse as containers."

I.C. § 6-2.5-5-9(a); 45 I.A.C. 2.2-5-16(e)(1).

**ANALYSIS**

On appeal, RR Donnelley claims that its purchase of shipping pallets are exempt from use tax under Indiana Code § 6-2.5-5-9(d) because they are <u>not</u> "returnable containers." To support this claim, RR Donnelley makes three arguments. First, it argues that neither it nor its retailer customers were obligated to return the pallets to Perfect Pallets. Second, RR Donnelley argues that <u>it</u> did not return the pallets to Perfect Pallets. Third, RR Donnelley argues that Perfect Pallet's unilateral recovery of pallets from the newspaper companies cannot determine the taxability of RR Donnelley.

A.

RR Donnelley first asserts that the pallets are not "returnable containers" because neither it nor its retailer customers are obligated to return the pallets. (<u>See, e.g.</u>, Pet'r Br. at 11, 18-19.) This Court has previously stated that the word, "return" for purposes of the Nonreturnable Container Exemption, means "to pass back to an earlier possessor" and "to bring, send, or put (a person or thing) back to or in a former position." <u>Brambles Indus., Inc. v. Indiana Dep't of State Revenue</u>, 892 N.E.2d 1287, 1291 (Ind. Tax Ct. 2008) (<u>citing</u> WEBSTER'S THIRD NEW INT'L DICTIONARY 1941 (2002 ed.).) Nothing in that definition indicates that the word "return" means more precisely "obligated to return." Moreover, the fact that the taxpayer in <u>Brambles</u> was contractually obligated to return the pallets, but neither RR Donnelley nor its retailer customers are here, is immaterial. Indeed, the import of the obligation in <u>Brambles</u> was simply to answer the question "to whom the pallets must be returned," not to determine whether there was an obligation to return them. <u>Id.</u> Accordingly, RR Donnelley's argument is

6

unpersuasive.

B.

Next, RR Donnelley contends that the pallets are not returnable containers because <u>it</u> did not return the pallets to Perfect Pallets. (<u>See</u>, <u>e.g.</u>, Pet'r Br. at 11, 18-19.) RR Donnelley explains that the statutory definition of a "returnable container" requires RR Donnelley itself – as the buyer of the pallets – to return them for reuse as containers. (<u>See</u> Pet'r Reply Resp't Resp. Pet'r Mot. Summ. J ("Pet'r Reply Br.") at 3.) RR Donnelley has misread Indiana Code § 6-2.5-5-9(a).

The plain language of Indiana Code § 6-2.5-5-9(a) indicates that "returnable containers" are those containers that are returned by the <u>buyer of the contents</u>, <u>not</u> by the buyer of the containers themselves. <u>See</u> I.C. § 6-2.5-5-9(a); 45 I.A.C. 2.2-5-16(e)(1). Because RR Donnelley is not the buyer of the contents of the pallets, the fact that it does not return the pallets to Perfect Pallets itself is not relevant to determining whether the pallets are returnable containers. <u>See</u>, <u>e.g.</u>, <u>Indiana Dep't of State Revenue v. Caterpillar, Inc.</u>, 15 N.E.3d 579, 583 (Ind. 2014) (explaining that clear and unambiguous statutes are given their plain and ordinary meaning).

C.

Finally, RR Donnelley argues that the act of returning pallets requires more than a "passive acquiescence" to their retrieval. (<u>See</u> Pet'r Br. at 20-21.) More specifically, RR Donnelley contends that under Indiana Code § 6-2.5-5-9(a), the newspaper companies must act affirmatively to return the pallets, not simply acquiesce to Perfect Pallets' unilateral retrieval of them. (<u>See</u>, <u>e.g.</u>, Pet'r Br. at 14.)

Although the newspaper companies are not the buyers of the contents of the

7

pallets, they have a consignment relationship with the retailers that buy the pallets' contents. (See Hr'g Tr. at 88-89.) As the retailers' consignees, the newspaper companies therefore act as agents on their behalf. See, e.g., McEwen v. Jeffersonville, Madison & Indianapolis R.R. Co., 33 Ind. 368, 376 (Ind. 1870); Reynolds Metals Co. v. Indiana Dep't of State Revenue, 433 N.E.2d 1, 18 (Ind. Ct. App. 1982). The designated evidence establishes that the newspaper companies do act affirmatively in the recovery of the pallets. For example, the newspaper companies customarily coordinate with Perfect Pallets by either placing the pallets in a location for Perfect Pallets to pick up or by calling Perfect Pallets and scheduling a pickup time. (See Haag Dep. at 20-21, 23-24.) As a result, RR Donnelley's final argument is also unpersuasive.

## CONCLUSION

For the reasons stated above, RR Donnelley's pallets are returnable containers, and RR Donnelley's purchases of those pallets do not qualify for the Nonreturnable Container Exemption. Accordingly, the Court GRANTS summary judgment in favor of the Department and against RR Donnelley.

SO ORDERED this 20th day of August 2015.

_____
Martha Blood Wentworth
Judge, Indiana Tax Court


DISTRIBUTION:

Mark J. Richards, Matthew J. Ehinger, Evan W. Bartel